UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x

ROYAL CROWN DAY CARE LLC, BORIS REY,
IRINA GAFINA and IRINA PRITSKER,

                Plaintiffs,

                                                    **MEMORANDUM & ORDER**
                v.                                          10-CV-5442 (MKB)

THE DEPARTMENT OF HEALTH AND MENTAL
HYGIENE OF THE CITY OF NEW YORK,
FRANK CRESCIULLO, individually and in his
official capacity, JAMES MORRISS, individually
and in his official capacity, and AURORA
VILLAREAL, individually and in her official capacity,

                Defendants.

-----------------------------------------------------------------x

MARGO K. BRODIE, United States District Judge:

       Plaintiffs Royal Crown Day Care LLC ("Royal Crown"), Boris Rey, Irina Gafina and Irina Pritsker bring the above-captioned action pursuant to 42 U.S.C. § 1983 against Defendants Department of Health and Mental Hygiene (the "Department of Health"), Frank Cresciullo, James Morriss and Aurora Villareal. Plaintiffs allege that Defendants suspended their day care permit in retaliation for a letter that Royal Crown sent to a state senator claiming, among other things, that Royal Crown was being harassed and that the Department of Health is corrupt. Defendants moved for summary judgment on all of Plaintiffs' claims, and Plaintiffs cross-moved for summary judgment on their procedural due process claim only. The Court heard argument on the parties' motions on July 13, 2012. At the argument, the Court ruled on the majority of the parties' motions but reserved decision as to Defendants' motion for summary judgment on (1) Plaintiffs' substantive due process claim and (2) claims by individual plaintiffs Boris Rey, Irina

Gafina and Irina Pritsker (the "Individual Plaintiffs").[1]  For the reasons set forth below, Defendants' motion is denied as to Plaintiffs' substantive due process claim but granted as to the Individual Plaintiffs.

## I. Background

On August 20, 2009, Royal Crown received a permit from the Department of Health for a child care service. (Def. 56.1 ¶ 2.) According to Defendants, the Department of Health received complaints about Royal Crown on September 30, 2009, October 9, 2009, December 3, 2009, December 11, 2009, February 22, 2010 and April 29, 2010. (Def. 56.1 ¶¶ 13–18.) The Department of Health investigated each of the complaints, but, for the most part, the complaints were determined to be unfounded or were remedied by the time the inspector left Royal Crown. *Id.* On April 13, 2010, Royal Crown's permit was amended to allow it to accommodate a total of 172 children. *Id.* at ¶ 7.

On April 30, 2010, the Department of Health received another complaint, and it sent four staff members to conduct an inspection. *Id.* at ¶ 19. According to Defendants, the inspectors identified a number of violations, including insufficient staffing and staff without criminal and child abuse registry clearances. *Id.* Plaintiffs claim that during the April 30 inspection, the inspectors arrived unannounced, disrupted the children's activities, yelled at the teachers and "otherwise conduct[ed] themselves in a rude, oppressive and unprofessional manner." (Compl. ¶ 37.) As a result of this inspection, Royal Crown sent a letter of complaint to New York State Senator Martin Golden. *Id.* at ¶ 38. In the letter, Royal Crown states, among other things, that

---

[1] At the July 13, 2012 argument, the Court granted Defendants' motion for summary judgment on Plaintiffs' procedural due process claim, unconstitutional taking claim, state law claims and as to Defendant Board of Health; denied Defendants' motions for summary judgment on Plaintiffs' First Amendment retaliation claim and on qualified immunity grounds; and denied Plaintiffs' motion for summary judgment on their procedural due process claim.

the owner of a rival day care has been calling the Department of Health with complaints; that during the recent inspection the Department of Health inspectors barged into the day care and insulted children and parents; and that the Department of Health is corrupt and trying to shut Royal Crown down. (Def. Summ. J. Ex. 16.) Senator Golden's office forwarded the letter to the Department of Health, asking them to respond to the allegations. *Id.*

In response to the letter, Defendant Cresciullo directed Defendant Morriss to assemble a team to conduct a thorough assessment of Royal Crown. (Def. 56.1 ¶ 24.) Defendant Morriss personally selected four inspectors for the investigation. *Id.* at ¶ 25. The four inspectors conducted a two-day inspection of Royal Crown on June 11 and June 14, 2010. *Id.* at ¶ 27. The inspectors then drafted a report listing a number of violations, including, among other things, employees without criminal and child abuse clearances, staff listed in the database that did not work at the day care center and classrooms that were overcapacity and understaffed. *Id.* at ¶¶ 29–32. Defendants claim that because inspectors identified 14 staff members without the proper clearances, Royal Crown could not remain open and the suspension of their permit was automatic. *Id.* at ¶ 34.

On June 15, 2010, Royal Crown's day care permit was suspended and it was ordered to cease operations. *Id.* at ¶ 35. The suspension order included the following provision: "To object to this Order or to request an opportunity to show cause why you should not remain closed, you must contact James Morriss, Director of Field Operations and Regulatory Enforcement at (212) 676-2464 within three days of receipt of this Order. If you have any questions please contact Mr. Morriss." *Id.* at ¶ 37. On June 18, 2010, the Department of Health served Royal Crown's counsel with a Petition and Notice of Hearing before the New York City Office of Administrative Trials and Hearings ("OATH") to permanently revoke its permit. *Id.* at ¶ 43.

3

After discovery was conducted, the OATH proceeding commenced on August 17 and was held August 17–19 and September 17. *Id.* at ¶ 48. The hearing was temporarily suspended so the parties could negotiate a settlement, but they could not reach an agreement and the hearings continued October 27–29 and November 12. *Id.* at ¶¶ 49–50. On November 12, 2010, Department of Health attorneys moved to terminate the OATH proceeding because Royal Crown had given up its lease and therefore the permit was automatically void. *Id.* at ¶ 52. Royal Crown's attorney objected, but the Administrative Law Judge ("ALJ") granted the Department of Health's motion to withdraw its charges with prejudice. *Id.* at ¶ 53. Royal Crown did not appeal this decision or proceed with its pending Article 78 proceeding.

Royal Crown alleges that on several occasions Defendant Aurora Villareal, a Brooklyn Borough manager, told Royal Crown that if it wanted to stay in business it had to pay money. (Compl. ¶ 70.) Defendants do not dispute that three Department of Health staff members, who had some contact with Royal Crown, were arrested in connection with a bribery scandal that involved a group of approximately 30 Brooklyn and Staten Island day care centers. (Def. 56.1 ¶ 54.) Defendant Villareal was arrested on August 10, 2010 and indicted for conspiracy to commit mail and "honest services" fraud. *Id.* at ¶ 55. Emile Nekhala and Dionne Rivers-Ettu, both of whom conducted inspections of Royal Crown, were also indicted. *Id.* at ¶ 56.

II. Discussion

    a. Standard of Review

Summary judgment is proper only when, construing the evidence in the light most favorable to the non-movant, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Doninger v. Niehoff*, 642 F.3d 334, 344 (2d Cir. 2011). The role of the court is not "to weigh the evidence and

determine the truth of the matter but to determine whether there is a genuine issue for trial."
*Cioffi v. Averill Park Cent. Sch. Dist. Bd. of Educ.*, 444 F.3d 158, 162 (2d Cir. 2006) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).  A genuine issue of fact exists when there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

### b. Substantive Due Process

In order to prevail on a substantive due process claim, Plaintiffs must show (1) that they had a valid property interest in the day care permit, and (2) that Defendants infringed that property interest in an arbitrary or irrational manner.  *Cine SK8, Inc. v. Town of Henrietta*, 507 F.3d 778, 784 (2d Cir. 2007) (citing *Harlen Assoc. v. Inc. Vill. of Mineola*, 273 F.3d 494, 503 (2d Cir. 2001)).  Substantive due process "does not forbid governmental actions that might fairly be deemed arbitrary or capricious and for that reason correctable in a state court lawsuit. . . .  [Its] standards are violated only by conduct that is so outrageously arbitrary as to constitute a gross abuse of governmental authority."  *Harlen Assoc.*, 273 F.3d at 503; *see also Natale v. Town of Ridgefield*, 170 F.3d 258, 263 (2d Cir. 1999) ("For state action to be taken in violation of the requirements of substantive due process, the denial must have occurred under circumstances warranting the labels 'arbitrary' and 'outrageous.'").  A defendant's decision to deprive a plaintiff of his or her property interest because of an illegal or unconstitutional motive is irrational and gives rise to a substantive due process claim.  *Natale*, 170 F.3d at 263; *see also Cine SK8*, 507 F.3d at 788 ("[P]laintiffs have sufficiently raised a genuine issue of material fact as to whether the Town's amendment of the special use permit was tainted by racial animus and hence was irrational.").

As the Court held at the July 13 argument, Plaintiffs have provided sufficient evidence from which a jury could infer that Defendants' suspension of their day care permit was motivated by retaliatory animus. Defendants do not dispute that, upon receiving the letter Royal Crown sent to Senator Golden, they initiated an investigation of Royal Crown, which was to include "a re-examination of past complaints that were found to be unsubstantiated." (Pl. Opp'n Summ. J. Ex. FF at 4; Pl. 56.1 ¶ 27; Def. Reply 56.1 ¶ 12.) Defendants did not take any steps to investigate Royal Crown's claim that it was being harassed or that the Department of Health was corrupt and trying to shut Royal Crown down. (Pl. Opp'n Summ. J. Ex E at 126–27.) Defendants did not consult with Royal Fisher, the inspector that had conducted the prior investigations into the complaints; instead, Defendant Morriss personally selected four inspectors to conduct a two-day investigation. (Pl. Opp'n Summ. J. Ex. E at 70–71.) In advance of that inspection, Defendant Morriss provided the inspectors with a detailed five-page memorandum, which informed the inspectors that Plaintiffs had received an above-average number of complaints and identified specific issues the inspectors were to look for in determining whether the prior complaints should be substantiated. (Pl. Opp'n Summ J. Ex. FF at 1–2.)

Defendants completed their inspection of Royal Crown on June 14, 2010 and Royal Crown's permit was suspended the next day—just six days after Defendants received Royal Crown's letter to Senator Golden. (Def. 56.1 ¶¶ 27, 34; Pl. Opp'n Summ. J. Ex. KK.) Prior to Royal Crown's letter, Defendants had conducted a number of inspections of the day care center and never taken any action to suspend or revoke their permit. In fact, Royal Crown's permit was amended on April 13, 2010 to allow it to accommodate a total of 172 children. (Def. 56.1 ¶ 7.) Defendants claim that because of the number of staff members without the proper clearances, the day care center was in violation of Health Code § 47.19 and suspension was automatic under

6

Health Code § 47.77. (Def. 56.1 ¶ 34.) Health Code § 47.77 states that "the Commissioner *may* order such child care service to close and to discontinue operations, suspending its permit, without further proceedings" but not that closure or the suspension of the permit is mandated. N.Y. Health Code § 47.77 (emphasis added). Defendants have failed to provide any evidence or cite any provision of the Health Code that supports their claim that the suspension of Royal Crown's permit was automatic as a result of Royal Crown's alleged violation of § 47.19. (Def. Summ. J. Mem. 17 ("Health Code § 47.77(a) *empowers* [the Department of Health] to suspend the permit to operate a child care service center in cases where the conditions or manner of its operation poses an imminent health hazard to the children under its care.")) (emphasis added). In fact, Royal Crown was cited for a number of violations, including "insufficient staffing" and "staff without criminal and child abuse clearances" on April 30, 2010, but the Department of Health did not even "consider[] closing the program or suspending the license." (Def. 56.1 ¶ 19; Pl. Opp'n Summ. J. Ex. BB.)

Based on the above facts, a jury could reasonably find that Defendants' decision to suspend Royal Crown's permit was motivated by retaliatory animus and was therefore irrational. *Cine SK8*, 507 F.3d at 788; *see also Cathedral Church of the Intercessor v. Inc. Vill. of Malverne*, No. 02 Civ. 2989, 2006 WL 572855, at *6 (E.D.N.Y. Mar. 6, 2006) ("From the SAC's more detailed allegations that Village officials, through various tactics, have stalled and delayed the Church expansion and to this day have refused to issue a certificate of occupancy, the Court concludes that such allegations are consistent with an improper motive on the part of Defendants. Plaintiffs' allegations of the disparate treatment of the Church compared to other churches and the synagogue in the Village support a reasonable inference that Defendants' actions rise to the level of 'shocking, abusive, capricious, or arbitrary' behavior so as to make out a constitutional

7

violation."). Defendants' motion for summary judgment as to Plaintiffs' substantive due process claim is denied.

### c. Individual Plaintiffs

Defendants argue that the Individual Plaintiffs—Rey, Gafina and Pritsker—do not have standing and must be dismissed. (Def. Summ. J. Mem. 21.) A plaintiff does not have individual standing where he or she alleges injuries that are indirectly caused by the harm to the corporation. *Jones v. Niagara Frontier Transp. Auth.*, 836 F.2d 731, 736 (2d Cir. 1987) ("Even though Jones may have felt personally aggrieved by defendants' failure to award contracts to the Corporation, and even though he may have faced the risk of financial loss as a result, the district court correctly dismissed Jones' individual claims for lack of standing."); *see also Caravella v. City of New York*, 79 Fed. App'x 452, 453 (2d Cir. 2003) ("Plaintiff has no individual standing to bring a civil rights action under 42 U.S.C. § 1983. The injuries to plaintiff as alleged were indirectly caused by harm to DVS and therefore are not 'distinct' from those of the corporation." (citing *Potthoff v. Morin*, 245 F.3d 710, 717 (8th Cir. 2001)); *Chabad Lubavitch v. Borough of Litchfield, Conn.*, 796 F. Supp. 2d 333, 339 (D. Conn. 2011) ("Federal courts have . . . not found individual standing for claims under Section 1983 that are indirectly caused by harm to [a corporation] and therefore are not 'distinct' from those of the corporation.") (internal citations omitted). "Asserting personal economic injury resulting from a wrong to a corporation is not sufficient." *Robinson v. Davis*, No. 07 Civ. 265, 2010 WL 4062863, at *2 (D. Vt. Oct. 15, 2010).

Plaintiffs contend that Rey and Gafina have independent claims because they are employees that lost their jobs as a result of Defendants' actions.[2] (Pl. Opp'n Summ. J. 21.) However, such a claim is derivative of Royal Crown's damages claim and their status as employees. *Robinson*, 2010 WL 4062863, at *2 ("The damage claim for reduced personal earnings is not cognizable as it is derivative of [the corporation's] damage claims and Robinson's status as an employee."). Accordingly, the Individual Plaintiffs do not have standing and their claims are dismissed. *See Potthoff v. Morin*, 245 F.3d 710, 717 (8th Cir. 2001) ("Potthoff's § 1983 claim can survive only if he has alleged that he personally has suffered a direct, nonderivative injury.").

## III. Conclusion

For the reasons set forth above, Defendants' motion is denied as to Plaintiffs' substantive due process claim but granted as to the Individual Plaintiffs. The parties are directed to file a Joint Pre-Trial Order within thirty (30) days.

SO ORDERED:

s/MKB
MARGO K. BRODIE
United States District Judge

Dated: July 20, 2012
      Brooklyn, New York

---

[2] Plaintiffs' counsel conceded during oral argument that Pritsker, a member of Royal Crown, does not have a claim independent of the corporation.