UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x

ROYAL CROWN DAY CARE LLC,

                          Plaintiff,

                                v.

THE DEPARTMENT OF HEALTH AND MENTAL
HYGIENE OF THE CITY OF NEW YORK,
FRANK CRESCIULLO, individually and in his
official capacity, JAMES MORRISS, individually
and in his official capacity, and AURORA
VILLAREAL, individually and in her official capacity,

                          Defendants.

**MEMORANDUM & ORDER**
10-CV-5442 (MKB)

-------------------------------------------------------------------x

MARGO K. BRODIE, United States District Judge:

      Plaintiff Royal Crown Day Care LLC ("Royal Crown") filed the above-captioned action pursuant to 42 U.S.C. § 1983 against Defendants Department of Health and Mental Hygiene (the "Department of Health"), Frank Cresciullo, James Morriss and Aurora Villareal.[1] After the completion of discovery, the parties cross moved for summary judgment. The Court granted in part and denied in part Defendants' motion for summary judgment and denied in its entirety Plaintiff's motion for summary judgment. *See Royal Crown Day Care LLC v. Dep't of Health & Mental Hygiene of City of N.Y.*, No. 10 Civ. 5442, 2012 WL 2992124 (E.D.N.Y. July 20, 2012). Defendants timely moved for reconsideration. For the reasons set forth below, Defendants' motion for reconsideration is denied.

---

[1] The Court dismissed plaintiffs Boris Rey, Irina Gafina and Irina Pritsker and defendant Board of Health from this action.

I.   **Standard of Review**

The standard for granting a motion for reconsideration "is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked — matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995); *see also* Local Rule 6.3 (The moving party must "set[ ] forth concisely the matters or controlling decisions which counsel believes the Court has overlooked."). "Reconsideration of a court's previous order is an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." *Hidalgo v. New York*, No. 11 Civ. 5074, 2012 WL 3598878, at *1 (E.D.N.Y. Aug. 20, 2012) (citation and internal quotation marks omitted). A motion for reconsideration "should not be used as a vehicle simply to voice disagreement with the Court's decision, . . . nor does it present 'an occasion for repeating old arguments previously rejected or an opportunity for making new arguments that could have previously been made.'" *Premium Sports Inc. v. Connell*, No. 10 Civ. 3753, 2012 WL 2878085, at *1 (S.D.N.Y. July 11, 2012) (citations and alteration omitted). Moreover, "it is well-settled that a party may not, on a motion for reconsideration, raise an argument for the first time." *Image Processing Tech., LLC v. Canon Inc.*, No. 10 Civ. 3867, 2012 WL 253097, at *1 (E.D.N.Y. Jan. 26, 2012) (citation, alteration and internal quotation marks omitted) (collecting cases).

II.  **Discussion**

Defendants seek reconsideration of the Court's denial of their motion for summary judgment on Plaintiff's First Amendment retaliation claim.[2] Defendants argue that the Court (1)

---

[2] Defendants also move for reconsideration of the Court's denial of their motion for summary judgment regarding substantive due process and qualified immunity. Having reviewed Defendants' arguments, the Court finds that Defendants have not identified any controlling

2

overlooked controlling law, and (2) applied the incorrect legal standard. (Def. Reconsid. Mem. 4–10.) First, Defendants argue that the Court overlooked controlling law, which states that where the action that caused the plaintiff's injury is a lawful action, "the motive giving rise to the lawful action is not relevant." (Def. Reconsid. Mem. 4.) As a preliminary matter, the Court notes that Defendants did not previously raise this argument, and, therefore, it is not a proper basis for reconsideration.[3] In any event, Defendants' argument is not persuasive. Defendants

---

decisions or facts that the Court overlooked and, therefore, reconsideration is not appropriate. Defendants also move for the first time to dismiss the claims against the Department of Health for failure to state a *Monell* claim. A party is not permitted to "advance new facts, issues or arguments not previously presented to the Court" on a motion for reconsideration. *Caribbean Trading & Fid. Corp. v. Nigerian Nat'l Petroleum Corp.*, 948 F.2d 111, 115 (2d Cir. 1991) (citation omitted). Therefore, the Court will not consider Defendants' *Monell* argument. Similarly, Defendants argue for the first time that the claims against defendant Villareal should be dismissed because there is insufficient evidence of her involvement. (Def. Reconsid. Mem. 13.) In Defendants' summary judgment motion, they moved to dismiss the claims against defendant Villareal based on qualified immunity only, although Defendants did argue that defendant Villareal's limited involvement was a basis for finding her immune. (Def. Summ. J. Mem. 15–18.) Regardless, the Court finds sufficient evidence from which a jury could infer that defendant Villareal was personally involved in the alleged violations of Plaintiff's rights. Defendants do not dispute that defendant Villareal pled guilty to bribery in connection with a scheme that involved 30 day care centers in Brooklyn and Staten Island, or that she was personally involved in issuing permits to Royal Crown in 2009 and 2010. (Def. 56.1 ¶¶ 54–55; Def. Reconsid. Reply 17.) Defendant Villareal's conviction did not involve any acts related to Royal Crown, but Villareal was convicted of accepting bribes from Ludmila Umarov, who was also indicted. (Def. Reconsid. Reply 17.) Plaintiff claims that Umarov was attempting to bribe Royal Crown; Royal Crown reported these briberies to defendant Villareal; and Villareal, who was working with Umarov, failed to report the bribes. (Declaration of Boris Rey ("Rey. Decl.") ¶¶ 12–19.) At her deposition, defendant Villareal testified that Boris Rey complained of Umarov's threatening comments and informed Villareal that he had filed a police report, but Villareal did not do anything. (Deposition of Aurora Villareal ("Villareal Dep.") 54–59.) Although Royal Crown's letter to Senator Golden did not specifically mention bribery, it did state that Royal Crown was being harassed by its neighbors and that the Department of Health was corrupt and trying to shut them down. (Def. Summ. J. Ex. 16.) A jury could infer that defendant Villareal was involved in attempting to bribe Royal Crown, the corruption complained of in the letter to Senator Golden, and, given her involvement with Royal Crown, participated in retaliating against Royal Crown.

[3] Although Defendants did argue in the underlying motion that they had acted with lawful purpose in accordance with the Health Code and the City Charter, they did not argue that this

cite a string of cases, which hold that a claim for retaliation cannot be sustained when a criminal prosecution or arrest is supported by probable cause. *See e.g.*, *Mozzochi v. Borden*, 959 F.2d 1174, 1180 (2d Cir. 1992) ("An individual does not have a right under the First Amendment to be free from a criminal prosecution supported by probable cause that is in reality an unsuccessful attempt to deter or silence criticism of the government."); *Golodner v. City of New London*, 443 F. App'x 622, 624 (2d Cir. 2011) ("[W]e affirm the District Court's dismissal on the alternate ground that the existence of probable cause is a complete defense to a claim of retaliatory arrest.").[4] Based on these cases, Defendants argue that "[a] retaliation claim can survive summary judgment only if the lawfulness of the alleged retaliatory action is in dispute." (Def. Reconsid. Mem. 4.)

Defendants provide no legal basis for adopting such a sweeping rule. Moreover, the Second Circuit's decision in *Blue v. Koran*, 72 F.3d 1075 (2d Cir. 1995), demonstrates that such a rule does not exist. In *Blue*, a nursing home brought a claim against employees of the Department of Health, alleging that the defendants conducted surveys of the nursing home "in an oppressive fashion in order to retaliate against [the nursing home] for [the Department of Health's] loss of a prior enforcement proceeding against [the nursing home]." *Id.* at 1079. The parties did not dispute that the Department of Health was authorized to conduct surveys of the

---

lawful purpose, in and of itself, defeats a claim of retaliation. (Def. Summ. J. Mem. 5–7.) Rather, Defendants argued that their enforcement of the Health Code could not have violated Royal Crown's substantive or procedural due process rights or constituted a taking because the regulatory enforcement was authorized. (Def. Summ. J. Mem. 6.) With regard to the retaliation claim, Defendants argued that Plaintiff could not "show any reasonable basis for imputing retaliatory motivations into the routine regulatory enforcement that defendants undertook with respect to Royal Crown." *Id.* Defendants' argument was that Plaintiff had not established evidence of a retaliatory motive, not, as they argue here, that evidence of motive is irrelevant.

[4] The Court notes that the cases cited by Defendants are addressing the issue in the context of whether or not a defendant is entitled to qualified immunity.

nursing home as part of its regulatory authority, but the plaintiff argued that the defendants had conducted the surveys with an improper retaliatory motive. *Id.* at 1083. Ultimately, the Second Circuit concluded that the plaintiff had not "provided legally sufficient evidence of retaliatory motive to survive a motion for summary judgment based on the defense of qualified immunity." *Id.* Notably, the Second Circuit did not find that the plaintiff's claim failed simply because the surveys were authorized by law and the industry in question was highly regulated; instead, the holding rested on insufficient evidence of a retaliatory motive. *Id.* at 1083–85.

Here, the Court found that the record contained sufficient evidence of retaliatory intent to create a question of fact for the jury. Defendants object to this finding, repeating their contention that the suspension of Royal Crown was "not only authorized but mandated by the Health Code." (Def. Reconsid. Mem. 6.) However, Defendants have not pointed to any fact or any evidence that the Court overlooked in determining that the closure of the day care center was not mandated. In reaching this conclusion, the Court emphasized that the relevant provision of the Health Code states only that the Commissioner "may" order the closure of a day care center and that, prior to its letter, Royal Crown was cited for similar violations, "but the Department of Health did not even 'consider[ ] closing the program or suspending the license.'" *Royal Crown Day Care*, 2012 WL 2992124, at *4 (citation omitted).

Still, Defendants argue that suspension was mandated by the "critical violations" — namely, the lack of criminal and child abuse clearances, absence of an educational director and insufficient staffing. (Def. Reconsid. Mem. 6.) Defendants claim that previously the inspectors had found only a "small number of non-critical violations," which is why Royal Crown had not been closed. (Def. Reconsid. Reply 7 n.3.) Defendants' argument is inconsistent with their own recitation of the facts. According to Defendants, "[o]n April 30, 2010, four BCC staff members

5

went to the subject premises and documented that there was insufficient staffing, staff without criminal and child abuse clearances and medical records, the presence of too many children in some classrooms, paperwork documenting the registration of two children under the age of two in the day care center although no underage child was seen during the inspection, and the absence of some required medical documentation." (Def. 56.1 ¶ 19.) Thus, some of the "critical violations" found during the June inspection were also found during the April inspection, but the Department of Health did not close Royal Crown in April. Although a jury may ultimately conclude that Defendants acted with a legitimate, non-retaliatory purpose, that question is for the jury, not this Court, to decide.

Next, Defendants argue that the Court applied the motion to dismiss standard instead of the summary judgment standard. (Def. Reconsid. Mem. 8–10.) Specifically, Defendants argue that the Court improperly relied on *Friedl v. City of New York*, 210 F.3d 79 (2d Cir. 2000) and *Posr v. Court Officer Shield # 207*, 180 F.3d 409 (2d Cir. 1999). (Def. Reconsid. Mem. 8–10.) In issuing its oral decision, the Court stated that "[i]n order to prevail on a retaliation claim, the Plaintiffs must establish that (1) their actions were protected by the Constitution or federal law; and (2) 'the defendant's conduct complained of was in response to that protected activity.'" (Tr. 54.) The Court stated that it was quoting *Friedl v. City of New York*, 210 F.3d 79, 85 (2d Cir. 2000), which, in turn, was quoting *Posr v. Court Officer Shield # 207*, 180 F.3d 409, 418 (2d Cir. 1999). The Court simply cited *Friedl* and *Posr* to establish the elements of the claim. In denying summary judgment on the retaliation claim, the Court relied on facts in the record, not allegations in the complaint. The Court found, based on the documentary evidence and the temporal proximity between Plaintiff's letter and the closure of the day care, that there was sufficient evidence in the record from which a jury could infer retaliatory animus. Therefore, the

Court properly concluded based on the evidence in the record that a genuine issue of fact exists regarding retaliatory intent.

**III.     Conclusion**

For the foregoing reasons, Defendants' motion for reconsideration is denied. The parties are directed to file a Joint Pre-Trial Order within thirty (30) days.

SO ORDERED:

_____s/MKB_____
MARGO K. BRODIE
United States District Judge

Dated:  November 20, 2012
        Brooklyn, New York